Bryon Benevento (5254)
DORSEY & WHITNEY LLP
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
benevento.bryon@dorsey.com

Scott E. Murry (*pro hac vice*)
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46244-0989
Telephone: (317) 822-4400
smurray@hooverhullturner.com

*Attorneys for Defendant HomeServices of America, Inc.
and HSF Affiliates LLC*

## UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HOMIE TECHNOLOGY, INC., a Delaware corporation, | |
| Plaintiff, | |
| v. | **HOMESERVICES OF AMERICA, INC. AND HSF AFFILIATES LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| NATIONAL ASSOCIATION OF REALTORS, an Illinois non-profit association; ANYWHERE REAL ESTATE INC., a Delaware corporation; KELLER WILLIAMS REALTY, INC., a Texas corporation; HOMESERVICES OF AMERICA, INC., a Delaware corporation; HSF AFFILIATES, LLC, a Delaware limited liability company; RE/MAX LLC, a Delaware limited liability company; and WASATCH FRONT REGIONAL MULTIPLE LISTING SERVICE, INC., a Utah corporation, | Case No.: 24-cv-00616

District Judge: Hon. Dale A. Kimball
Magistrate Judge: Hon. Jared C. Bennett |
| Defendants. | |

## INTRODUCTION AND GROUNDS FOR RELIEF

The allegations in this case are not new. Starting in 2019, consumers filed multiple antitrust class actions around the country challenging how residential real estate brokers were paid in the United States. Those lawsuits focused on a subset of rules and policies enacted by the National Association of REALTORS® ("NAR") that were alleged to be anticompetitive. A central allegation in those cases was that NAR's rules and policies inflated broker commissions by enabling agents to identify and punish so-called "discount brokers" who sought to compete on price.[1] Those consumer class actions generated wide publicity over the years, culminating with a federal trial in Kansas City in 2023 and multiple nationwide settlements.

The Plaintiff here—Homie Technology, Inc.—has filed a complaint repeating many of those same conspiratorial allegations. Plaintiff is a real estate company founded in 2015 that purports to be one of those discount brokers who sought to compete with traditional brokers by offering lower commissions. The Complaint alleges Plaintiff "suffered as another victim of the Defendants' conspiracy," incurring damages "as an excluded competitor foreclosed by the Defendants' conduct from effective competition in the relevant market."

There are multiple problems with Plaintiff's claims.

First, Defendants HomeServices of America, Inc. ("HomeServices") and HSF Affiliates LLC ("HSF") are not subject to personal jurisdiction in this Court. Both are Delaware entities— one headquartered in Minnesota and the other in California. Neither has any employees, offices, or operations in Utah. Neither has any connection to Utah. Both should be dismissed for lack of personal jurisdiction.

---

[1] *E.g. Moehrl et al. v. National Association of REALTORS et al.,* 1:19-cv-01610 (N.D. Ill.), Dkt. 84 at ¶68.

Second, Plaintiff's claims are stale. As noted above, the initial class actions challenging the NAR rules at issue were filed in early 2019—more than four years before Plaintiff filed its Complaint here. Similarly, the NAR rules at issue were all enacted more than four years before Plaintiff filed its Complaint—some dating back to the 1990s. To the extent those rules caused Plaintiff any harm, that harm was necessarily suffered as soon as Plaintiff entered the market in 2015. Thus, the statutes of limitations have run, and Plaintiff's claims must be dismissed.

Finally, there are multiple substantive deficiencies with Plaintiff's claims. These include the lack of any plausible causal connection between NAR's rules and Plaintiff's alleged harm; the lack of any allegations connecting HomeServices or HSF to any wrongful act; and Plaintiff's lack of antitrust standing. For these additional reasons, the claims against HomeServices and HSF should be dismissed.

# I.    MATERIAL FACTUAL ALLEGATIONS IN THE COMPLAINT

## A.    The Parties

Plaintiff Homie Technology, Inc. ("Homie" or "Plaintiff") is a Delaware corporation headquartered in Utah. (Compl., ECF No. 1, ¶ 17.)[2] Plaintiff purports to be a "disruptor" in the real estate industry, offering services at "significant savings compared to the high commissions charged by traditional real estate brokerages." (¶ 17) Plaintiff alleges it first started doing business in 2015. (¶ 44)

Plaintiff has asserted three claims in this lawsuit: Count I for violation of Section 1 of the Sherman Act; Count II for violation of Utah's antitrust statute; and Count III for tortious interference with economic relations. (¶¶ 137-147)

---

[2] For brevity, citations to the Complaint will refer simply to paragraph numbers.

Defendants are NAR and entities associated with some of the most well-known residential brokerage brands in the country: Anywhere Real Estate Inc. (associated with brands such as Century 21 and Coldwell Banker); Keller Williams Realty, Inc.; RE/MAX LLC; and HomeServices of America, Inc. and HSF Affiliates LLC (both associated with Berkshire Hathway HomeServices). (¶¶ 20-23) Plaintiff also sued the Wasatch Front Regional Multiple Listing Service, Inc., a Utah corporation that owns the "dominant MLS in Utah . . . ."[3] (¶ 19) But the MLS has now been dismissed. (ECF No. 63.)

This motion is being filed by Defendants HomeServices and HSF. HomeServices is a Delaware corporation with its principal place of business in Minnesota. (¶ 21) HomeServices is a holding company first incorporated around 1998. (Aff. of Dana Strandmo ("Strandmo Aff."), ¶¶ 4-5 (attached as Exhibit A).) It does not have any offices, employees, or operations in Utah. *Id.* at ¶ 3. It is not a real estate broker. *Id.* at ¶ 5. It is not a member of NAR. *Id.* at ¶ 6. It does not sell services to consumers. *Id.* at ¶ 5. And it did not play any role in the enactment, enforcement, or implementation of any of the NAR rules at issue in this case. *Id.* at ¶ 7.

HSF is a Delaware limited liability company with its principal place of business in California. (Aff. of Steven Ladd ("Ladd Aff."), ¶ 2 (attached as Exhibit B).) It also is primarily a holding company formed in 2012. *Id.* at ¶¶4-5. It does not have any offices, employees, or operations in Utah. *Id.* at ¶ 3. It is not a member of NAR. *Id.* at ¶ 7. It does not engage any real estate agents in Utah or otherwise. *Id.* at ¶ 6. And it did not play any role in the enactment, enforcement, or implementation of any of the NAR rules at issue in this case. *Id.* at ¶ 8.

---

[3] An "MLS," or multiple listing service, can be thought of as a centralized database of homes for sale in a given area. (¶ 35)

### B.       The challenged conduct

Plaintiff alleges Defendants were part of a nationwide conspiracy of "traditional real estate brokers who acted in concert through the MLS to promulgate a web of rules and practices that created substantial barriers to competition." (¶ 6) Specifically, Plaintiff identifies five NAR rules and policies that it labels the "Exclusionary Rules and Policies." We will call them the "Challenged NAR Rules." Those NAR rules and their alleged enactment dates are listed below:

- Buyer-Broker Compensation Rule—1996 (¶ 59);

- Commission-Filter Rules and Practices—2012 (¶ 73);

- Free-Service Rule—1997 (¶ 77);

- Commission-Concealment Rules—2012 (¶ 81); and

- Clear Cooperation Policy—2019 (¶ 87).

Although the precise mechanics are not at issue in this motion, Plaintiff alleges the Challenged NAR Rules inflated commissions and excluded competitors by (1) requiring real estate brokers to put their listings on the local MLS; (2) requiring those listing brokers to include a fixed, definite offer of compensation to any other broker who represents a successful buyer (the "buyer agent commission," or "BAC"); (3) prohibiting consumers from seeing those buyer agent commission offers; (4) permitting buyer brokers to advertise their services as "free" to the buyer; and (5) permitting buyer brokers to filter listings by the amount of buyer agent commission offered. (¶¶ 59, 73, 79, 81, 92) Plaintiff alleges these rules worked in combination to facilitate the so-called "steering" of clients away from discount brokers like Plaintiff. The Complaint summarizes Plaintiff's theory:

> Because the offer of compensation [to buyer brokers] was displayed in the MLS, buyer-brokers would steer their clients away from sellers offering low buyer-broker commissions and towards sellers offering high buyer-broker commissions. By giving buyer-brokers the ability through the MLS to detect and punish price discounting by seller-brokers, NAR's Buyer-Broker Compensation Rule . . .

4

created a fundamentally anticompetitive market structure that systematically excludes brokers like Homie seeking to compete by offering lower commissions.

(¶ 38)

### C. Plaintiff's acknowledgement that the alleged anticompetitive activity and surrounding publicity started more than four years ago.

Plaintiff is not the first to raise these allegations. As acknowledged in the Complaint, the Challenged NAR Rules "have been the subject of substantial antitrust enforcement under Section 1 of the Sherman Act." (¶ 42) For example, Plaintiff cites to the *Burnett* case in the Western District of Missouri, which was filed in April 2019 and tried to verdict in October 2023. (¶ 42 (citing *Burnett v. Nat'l Assoc. of REALTORS,* No. 4:19cv-00332 (W.D. Mo.))) Plaintiff alleges the *Burnett* litigation was "widely covered by the local media in Utah[,]" including in a local news story on 2KUTV entitled "Realtors accused of conspiring to fix Commission in new lawsuit . . . ." (¶ 67)

A copy of the cited news story is attached to this memorandum as Exhibit C. The printout shows the article was published in April 2019 (more than four years before the filing of the Complaint) and focused on home sellers who had hired the Plaintiff—Homie Technology—to sell their house.[4] (A video of the accompanying newscast is also available at

https://kutv.com/news/get-gephardt/realtors-accused-of-conspiring-to-fix-commissions-in-new-lawsuit.) The couple in the news story says that, after hiring Plaintiff as their agent, other real estate agents called to complain that the sellers and Plaintiff were not offering a buyer broker commission on the MLS and therefore those agents would not be showing the couple's home to their buyers. *Id.* Plaintiff itself alleges this 2019 news story illustrates "[t]he exclusionary

---

[4] The Court may properly consider documents incorporated into the complaint by reference or otherwise referred to in the complaint when considering a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

steering facilitated by NAR's Exclusionary Rules and Policies" that forms the basis of its claims in this lawsuit. (¶ 67)

The Complaint also cites another antitrust case filed in May 2020—more than four years before the filing of this case—by another purported "disruptor" who challenged NAR's Clear Cooperation Policy (another of the Challenged NAR Rules) as anticompetitive. (¶ 42 (citing *PLS.Com, LLC v. Nat'l Ass'n of REALTORS,* No. 3:20-cv-03198 (N.D. Cal.))

Finally, the Complaint refers to a "Federal Trade Commission/Department of Justice workshop," where other discount brokers complained about having "bricks thrown through car windows"; "cars egged"; "hate mail sent to . . . sellers"—all purportedly in response to those brokers' offering "lower commission[s] on the MLS." (¶ 61) Although Plaintiff omits the date of that workshop from the Complaint, a written transcript published on the FTC's website shows the workshop was held on June 5, 2018—more than four years before the filing of the Complaint in this action.[5] *See* https://www.ftc.gov/news-events/events/2018/06/whats-new-residential-real-estate-brokerage-competition-ftc-doj-workshop (last accessed on October 9, 2024).

## II. NEITHER HOMESERVICES NOR HSF IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.

This case cannot proceed against HomeServices or HSF unless Plaintiff establishes each is subject to personal jurisdiction in this Court. Plaintiff cannot do so.

---

[5] The Court may properly take judicial notice of the dates of this workshop as part of considering this motion to dismiss. *New Mexico ex rel. Balderas v. Google, LLC,* 489 F. Supp. 3d 1254, 1256-57 (D.N.M. 2020) ("Under Federal Rule of Evidence 201, judicial notice is permitted of a fact which is a matter of public record even if it is not incorporated into the pleadings if it is not subject to reasonable dispute because it is . . . capable of accurate and ready determination by resort to 'sources whose accuracy cannot reasonably be questioned.'").

### A.    Plaintiff bears the burden of proving personal jurisdiction.

Plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction. *Old Republic Ins. Co. v. Cont'l Motors, Inc.,* 877 F.3d 895, 903 (10th Cir. 2017). The court accepts as true all well-pleaded allegations in the complaint unless the defendant contradicts those allegations with affidavits. *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir. 1990). If the parties submit conflicting affidavits, any factual disputes are resolved in plaintiff's favor. *Id.*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman,* 571 U.S. 117, 125 (2014). Utah's long-arm statute extends jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment, meaning the analysis under that statute collapses with the Constitutional analysis. *The Neck Hammock, Inc. v. Danezen.com,* 2:20-CV-287-DAK-DBP, 2020 WL 6364598, at *5 (D. Utah Oct. 29, 2020) (citing Utah Code Ann. § 78B-3-201(3)). The touchstone of the Constitutional test for personal jurisdiction is whether "the defendant purposefully established minimum contacts in the forum State." *XMission, L.C. v. PureHealth Research,* 105 F.4th 1300, 1307 (10th Cir. 2024) (quotation marks and citation omitted).

Personal jurisdiction comes in two types—general and specific. *See id.* at 1308. Corporate and LLC defendants are typically subject to general personal jurisdiction only in those states where they are organized or have their principal place of business. *Daimler,* 571 U.S. at 137. Such defendants may be sued for any cause of action in such jurisdictions, regardless of where the underlying cause of action accrued. *XMission,* 105 F.4th at 1308.

In contrast, if a defendant is subject only to specific personal jurisdiction, any suit must arise out of or relate to the defendant's contacts with the forum state. *Id.* (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F.W Cnty.,* 582 U.S. 255, 262 (2017)). When assessing specific jurisdiction, among other requirements, the court must "determine whether the defendant

purposefully directed its activities at residents of the forum . . . and whether the plaintiff's claim arises out of or results from actions by the defendant that create a substantial connection with the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) and *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 109 (1987) (citations and quotation marks omitted)).

Finally, under the Clayton Act, Congress has provided for personal jurisdiction over domestic corporations if certain requirements are met. Those requirements are subject to a circuit split, and the Tenth Circuit has not yet opined. We discuss the nature of this split and its implications below.

### B.    Neither HomeServices nor HSF is subject to general jurisdiction in Utah.

The Complaint does not allege general jurisdiction over either HomeServices or HSF. Nor could it. As set forth in Section I.A. above, HomeServices is a Delaware corporation with its principal place of business in Minnesota. HSF is a Delaware limited liability company with its principal place of business in California. Neither has any offices, employees, or other operations in Utah. Thus, neither is subject to general jurisdiction here.

### C.    Neither HomeServices nor HSF are subject to specific jurisdiction in Utah.

Nor are either of these defendants subject to specific jurisdiction in Utah. As set forth above, specific jurisdiction over a defendant only exists if the claim at issue arises from actions by the defendant that create a substantial connection between that defendant and the forum state. Here, the Complaint does not allege a single action taken by either HomeServices or HSF that both forms the basis of Plaintiff's claim and creates a substantial connection to the State of Utah.

Nor could it. As set forth in Section I.A. above, neither HomeServices nor HSF has any employees, offices, or operations in the State of Utah. Neither has any real estate agents who list

properties for sale or represent buyers in Utah. Neither has entered into any franchise agreements with any Utah brokers. Neither is a member of NAR. Neither is a member of any local REALTOR® association or MLS in Utah.

Because Plaintiff has not alleged – and cannot allege – that either HomeServices or HSF purposely directed any act at the residents of the State of Utah that form the basis of Plaintiff's claims, neither is subject to specific personal jurisdiction in this Court.

**D.    The Clayton Act does not create personal jurisdiction over either HomeServices or HSF.**

Plaintiff will likely attempt to justify jurisdiction over HomeServices and HSF by relying on Section 12 of the Clayton Act (codified at 15 U.S.C. § 22). But most circuits to have considered the question have held that Section 12 **<u>cannot</u>** be used in the manner sought by Plaintiff here. Although the Tenth Circuit has not yet addressed the issue, this Court should follow the majority position.

To begin, all courts agree that Section 12 contains two provisions—the first addresses venue (*i.e.,* where an antitrust suit can be filed; highlighted in yellow below) and the second provides for nationwide service of process (highlighted in blue below):

**§ 22 District in which to sue corporation**

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. The question for this Court is whether Plaintiff can rely on the second clause of the statute to establish personal jurisdiction without also satisfying the venue provision in the first.

Most circuit courts to have addressed the question have said "no." The most recent circuit court to do so was the Seventh Circuit in *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.,* 725 F.3d 718 (7th Cir. 2013). In a thorough opinion addressing the circuit split, the court reasoned the most logical interpretation of the phrase "such cases" in the second clause of Section 12 includes only those cases described in the first clause—*i.e.,* only those cases filed "under the antitrust laws against a corporation" in the "judicial district whereof it is an inhabitant" or "wherein it may be found or transacts business . . . ." In other words, if a plaintiff has (1) filed an antitrust action against a corporation **and** (2) filed that action where the corporation is an inhabitant, is found, or transacts business, then—and only then—can the plaintiff take advantage of the nationwide service of process language in the second clause of Section 12 to establish personal jurisdiction over the defendant. This is called the "integrated" approach to Section 12.

One of the main reasons the Seventh Circuit reached this conclusion was because, under the minority interpretation, the venue provision in the first clause of Section 12 would be surplusage. To see this, consider that Rule 4(k) of the Federal Rules of Civil Procedure states that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Fed. R. Civ. P. 4(k). The general venue provision in Title 28 then states: "A civil action may be brought in . . . a judicial district in which any defendant resides . . . ." 28 U.S.C. § 1391(b)(1). Finally, the general venue statute also states that "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." *Id.* at § 1391(c)(2). Thus, under the minority position, a plaintiff suing a corporate defendant on an antitrust claim could rely on the second clause of Section 12 to serve process anywhere (thus obtaining personal jurisdiction over the defendant

under Rule 4(k)) and then establish venue over that same defendant anywhere using §
1391(c)(2). Under this reading, there would have been no reason for Congress to include the first
clause of Section 12 addressing venue for antitrust actions because that clause would always
provide fewer options for venue than § 1391(c)(2).

The Seventh Circuit explained its preference for the "integrated" approach to reading
Section 12 as follows:

> Reading the two clauses of Section 12 independently creates textual problems of
> its own. If the clauses are not linked, then the venue language is superfluous.
> Interpretations that render words of a statute superfluous are disfavored as a
> general matter, *e.g.*, *Astoria Fed'l Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104,
> 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), and this principle has even greater
> force in a context such as this, where, in order to decouple Section 12's venue and
> service-of-process provisions, we would have to assume that Congress
> intentionally joined the two provisions with a semicolon, but nevertheless
> intended for the second provision to render the first "disposable," *GTE New
> Media,* 199 F.3d at 1351. *Accord* *Go–Video,* 885 F.2d at 1413 (recognizing that
> this interpretation of Section 12 had the potential to render the venue provision
> "wholly redundant").
>
> Even setting aside problems of surplusage, the independent reading of Section 12
> leads to some very odd results. *Cf.* *Griffin v. Oceanic Contractors, Inc.,* 458 U.S.
> 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ( "[I]nterpretations of a statute
> which would produce absurd results are to be avoided if alternative interpretations
> consistent with the legislative purpose are available."). As noted earlier, allowing
> antitrust plaintiffs to mix and match Section 12's service-of-process provision
> with Section 1391's general venue provision renders the venue inquiry
> meaningless, since venue is satisfied in every federal judicial district under
> subsection (c)(2). This runs contrary to Congress's apparent intent in passing
> Sections 12 and 1391 that there be *some* limits on venue, in antitrust cases
> specifically and in general. Both statutes authorize venue only when certain
> enumerated requirements are met, be it that the defendant "transacts business" in
> the district, "resides" there, or something else. It would be quite strange to read
> two statutes that place limits on venue in a manner that eliminates those limits.

*KM Enter.,* 725 F.3d at 729-30. The Second Circuit and the D.C. Circuit have taken the same
position as the Seventh Circuit. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 424 (2d Cir.
2005); *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000).

We also note that the integrated approach is consistent with the heading of the statute: "District in which to sue corporation." 15 U.S.C. § 22; *Johnston v. C.I.R.,* 114 F.3d 145, 150 (10th Cir. 1997) ("the title to a statutory provision is not part of the law itself, although it can be used to interpret an ambiguous statute").[6]

The majority, integrated approach is the better interpretation, and the Court should adopt it here.

### 1.    Under either interpretation, HSF is not subject to jurisdiction under Section 12 because it is not a corporation.

Regardless of which interpretation the Court adopts, Plaintiff cannot rely on Section 12 to obtain personal jurisdiction over HSF. Even under the minority position, courts agree the term "such cases" in the nationwide service of process clause refers only to antitrust cases filed against corporations. *E.g., San Francisco Comprehensive Tours, LLC v. Tripadvisor, LLC,* 2021 WL 4394253, at *5 (D. Nev. Sept. 24, 2021) ("Multiple district courts and the Third Circuit have strictly construed the statute and excluded limited liability companies from Section 12 of the Clayton Act.").

HSF is a limited liability company; it is not a corporation. Thus, the Clayton Act does not provide personal jurisdiction over HSF, regardless of which interpretation the Court adopts. HSF must be dismissed.

### 2.    HomeServices is not an "inhabitant" of this district; nor is it found or does it transact business here.

HomeServices is not subject to jurisdiction under the integrated reading of Section 12 because venue is not proper in this district under the first clause.

---

[6] The Ninth and Third Circuits take the minority view. *Go-Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406 (9th Cir. 1989); *In re Auto. Refinishing Paint Antitrust Litig.,* 358 F.3d 288 (3d Cir. 2004).

First, HomeServices is not an "inhabitant" of Utah. To be an "inhabitant" means to be incorporated in the district. *KM Enter.,* 725 F.3d at 725. And, as set forth above, HomeServices is a Delaware corporation. It is thus not an "inhabitant" of Utah.

Second, HomeServices is neither "found" in Utah, nor does it "transact business" here. "Being found and transacting business both refer to a corporation's activities in the district, with the latter concept interpreted more expansively than the former." *Id.* As the Seventh Circuit explained in *KM Enterprises,* "[t]he Supreme Court interprets the phrase 'transacts business' as 'the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'" *Id.* at 731 (quoting *United States v. Scophony Corp. of Am.,* 333 U.S. 795, 807 (1948)). HomeServices does not have any offices in Utah; it does not have any employees in Utah; and it does not sell any goods or services in Utah. It therefore does not "transact business" in Utah.

Because Plaintiff cannot satisfy the venue requirements of Section 12 with respect to HomeServices, Plaintiff cannot rely on the second clause of Section 12 to establish jurisdiction. HomeServices must be dismissed.

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS.

Even if HomeServices and/or HSF were subject to personal jurisdiction in Utah, dismissal would be required because Plaintiff's claims are untimely. The statute of limitations on each of Plaintiff's claims is four years. 15 U.S.C. § 15b (Sherman Act); Utah Code § 76-10-3117 (Utah Antitrust Act); *White v. Wiseman,* Case No. 2:16-cv-01179-DBB-JCB, 2020 WL 3922977, at *7 (D. Utah July 10, 2020) (tortious interference).

Where the dates set forth in a complaint make clear that the statute of limitations has expired on a claim, the plaintiff has the burden of establishing a factual basis for tolling the limitations period. *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir.

13

1980). Statutes of limitations may therefore be resolved through a motion to dismiss. *Id.* This is such a case.

Plaintiff's antitrust claims allege "the adoption and enforcement of [the Challenged NAR Rules] by Defendants reflect concerted action between horizontal competitors and constitute agreements among competing real estate brokers that restrain competition in the relevant markets." (¶ 138.) The Challenged NAR Rules are defined as:

- NAR's Buyer-Broker Compensation Rule, adopted in 1996 (¶ 59);

- NAR's Commission-Filter Rules and Practices, adopted by May 2012 (¶ 73);

- NAR's Free-Service Rule, adopted by January 1997 (¶ 77);

- NAR's Commission-Concealment Rules, adopted by May 2012 (¶ 81); and

- NAR's Clear Cooperation Policy, adopted in 2019 (¶ 87).

Thus, the Complaint acknowledges all the Challenged NAR Rules were adopted more than four years prior to this lawsuit, which was filed on August 22, 2024. And, in a case like this, where the plaintiff alleges an agreement between competitors excluded it from competing, the date of the alleged exclusion controls:

> When the injury at issue involves exclusion from an industry or market based on an antitrust violation, the excluded would-be competitor typically has knowledge of the 'public' act of exclusion, and thus, the injury is felt immediately.

*CSX Transportation, Inc. v. Norfolk Southern Railway Co.*, 648 F. Supp. 3d 679, 692 (E.D. Va. 2023). *Accord North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322, 331 (M.D.N.C. 1991) ("Judge Posner, a former antitrust professor, has explained that to a potential competitor 'exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs even though, in the nature of things, the victim's losses lie mostly in the future.'" (cleaned up)).

Here, Plaintiff alleges to have entered the market in 2015. (¶ 44) All but one of the allegedly anticompetitive rules were already in place as of that time, and thus, to the extent those rules acted to exclude Plaintiff from the market, their impact would have been felt immediately. And the last allegedly anticompetitive rule at issue was adopted in 2019, also more than four years before the filing of this action.

Even if it were legally relevant, Plaintiff cannot claim to have been ignorant of the allegedly anticompetitive nature of these rules. To the contrary, Plaintiff acknowledges in the Complaint that widely publicized class action lawsuits were filed in 2019 on behalf of home sellers challenging the very same rules that are at issue in this case and making the same exclusionary arguments as Plaintiff. The Complaint alleges:

> The exclusionary steering facilitated by NAR's Exclusionary Rules and Policies was widely covered by the local media in Utah. The news program Get Gephardt of 2KUTV aired a piece entitled "Realtors accused of conspiring to fix Commission in new lawsuit," showcasing a couple selling their home. The couple claimed outside agents bullied them regarding their BAC [buyer agent commission]—pushed to offer or raise BAC, punished by agents refusing to bring buyers, hounded with phone calls, and forced to hear rumors and bad-mouthing regarding their brokerage.

(¶ 67) As mentioned above, this piece was published in 2019 and focused on alleged exclusionary conduct perpetrated against the Plaintiff in this case. Therefore, Plaintiff cannot claim to have been unaware of the alleged exclusionary impact of the NAR rules at issue in 2019, meaning the four-year statute of limitations on all its claims ran well before the filing of this action in August 2024.

Plaintiff also cannot avoid dismissal by relying on vague allegations that, within four years of filing the Complaint, certain unidentified real estate agents engaged in specific acts of "steering consumers away from Homie's clients, causing Home's clients to cancel their contracts with Homie, and causing Home's business partners not to renew their existing contracts with

Homie." (¶ 146) The Complaint does not include any allegations connecting any of these alleged acts to either HomeServices or HSF, thus Plaintiff cannot rely on these unattributed acts to somehow extend the statutes of limitations for its claims against HomeServices and HSF.

Because Plaintiff claims to have been excluded from the real estate brokerage market due to NAR rules and policies that have been in effect for more than four years, the statutes of limitations have run on Plaintiff's claims. They must therefore be dismissed as untimely.

## IV.   PLAINTIFF'S CLAIMS SUFFER FROM ADDITIONAL SUBSTANTIVE DEFECTS

Even if HomeServices and HSF were subject to personal jurisdiction in Utah and even if Plaintiff had timely filed its claims, those claims would still fail as a matter of law for multiple reasons. We address these additional reasons below.

### A.    Plaintiff has not pleaded facts plausibly connecting any act by HomeServices or HSF to Plaintiff's alleged harm.

Causation is a fundamental element of both Plaintiff's antitrust and tortious interference claims. *Apotex, Inc. v. Cephalon, Inc.,* 255 F. Supp. 3d 604, 612 (E.D. Penn. 2017) ("Causation is an essential element of a private plaintiff's antitrust case."); *Eldridge v. Johndrow,* 345 P.3d 553, 556 (Utah 2015) (listing causation as element of tortious interference claim). And to state a claim for relief, a complaint's allegations of causation must be plausible. *E.g., Roland v. Letgo, Inc.,* 2024 WL 372218, at *5 (10th Cir. Feb. 1, 2024) (affirming dismissal for failure to plead plausible causation theory). Plaintiff has not met that burden here.

The Complaint appears to suggest two ways the alleged conspiracy injured Plaintiff. First, Plaintiff complains that the Challenged NAR Rules "excluded new entrants seeking to compete by offering buyers and sellers opportunities to transact at lower prices than those traditionally charged by NAR members." (¶ 58) But Plaintiff began operating in 2015, and all but one of the Challenged NAR Rules were already in effect at that time. Indeed, the primary rule at

16

issue—NAR's Buyer-Broker Compensation Rule—dates back to at least 1996. (¶ 59) Yet Plaintiff alleges it initially had great success as a broker, despite the presence of the NAR rules: "Homie's 2015 entry into the real estate brokerage market in Utah was initially successful. Homie was, at various times between 2017 and 2021, among the five largest brokerages by market share in the state." (¶ 49)

Plaintiff's demonstrated ability to compete successfully for numerous years despite the existence of the Challenged NAR Rules proves these rules could not have been the cause of Plaintiff's subsequent difficulties. If the Challenged NAR Rules excluded competitors, as Plaintiff alleges, then Plaintiff would not have been able to achieve the success it experienced from 2015 to 2021. Thus, even if HomeServices and HSF could be held responsible for NAR's rules—a point that both defendants dispute and will be subject to abundant contrary evidence if this case proceeds—the Complaint does not include any facts plausibly connecting those rules to Plaintiff's alleged harm. Those rules thus cannot form the basis of Plaintiff's claims.

Instead, Plaintiff really appears to be complaining about a second, separate way in which it might have been harmed. Plaintiff alleges that, after initially experiencing success in the marketplace, local brokers and agents engaged in an illegal boycott of Plaintiff's services. The Complaint states:

> Homie's initial success sparked an anticompetitive campaign among Homie's competitors to exclude Homie. The campaign against Homie was facilitated by NAR's Exclusionary Rules and Policies, each and every one of which hampered Homie's ability to compete in Utah, permanently depressing Homie's market share, revenue, and profitability.
>
> Homie was subject to both express and tacit boycotts in Utah by incumbent brokerages, some affiliated with the Corporate Defendants . . . .

(¶¶ 50-51)

But the Complaint does not include a single, non-conclusory factual allegation connecting either HomeServices or HSF to any such alleged boycott. There is no allegation that HomeServices or HSF participated directly in any such boycott. There is no allegation that either entity entered into any agreements with anyone else to participate in such a boycott. And there is no allegation that either entity directed anyone else to participate in such a boycott. Instead, there are just a handful of anecdotes of certain unnamed local Utah agents either criticizing or refusing to do business with Plaintiff. *E.g.,* ¶¶ 64 (alleging that unnamed agents criticized Plaintiff's failure to offer buyer agent commissions on certain listings); ¶65 (quoting email from unnamed agent criticizing magnitude of buyer agent commission offered by Plaintiff on listing); ¶ 66 (quoting text message criticizing magnitude of buyer agent commission offered by Plaintiff on listing).

Paragraph 69 of the Complaint does allege that certain unnamed "Berkshire Hathaway . . . franchisees in Utah publicly advertised that they would not work with Homie-represented buyers." (¶ 69) This single allegation does not suffice. First, although the "Berkshire Hathaway" brand is associated with affiliates of HomeServices and HSF, neither HomeServices nor HSF is the franchisor and, in any event, the Complaint does not provide any factual basis for holding the franchisor vicariously liable for the actions of independent franchisees. *E.g., National Gear & Piston, Inc. v. Cummins Power Systems, LLC,* 975 F. Supp. 2d 392, 408 (S.D.N.Y. 2013) (dismissing claims against franchisor where complaint failed to include nonconclusory allegations sufficient to impose vicarious liability; "It appears that under any body of law, to impose vicarious liability against a franchisor, a plaintiff must allege the existence of a franchise agreement, which grants the franchisor meaningful control over the franchisee's day-to-day

activities, and which control the franchisor exercised with respect to the conduct or injury at issue." (collecting cases)).

Moreover, it is not illegal for individual franchisees to refuse to do business with Plaintiff (or anyone else, for that matter), unless that refusal is part of an agreement among horizontal competitors. *E.g., New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.,* 994 F.3d 1166, 1172 (10th Cir. 2021) (generally, "unilateral conduct cannot be considered anticompetitive"). Here, the Complaint does not contain any non-conclusory allegations of any such horizontal agreement between any so-called "Berkshire Hathway" franchisees and anyone else. *See also Orval Sheppard Real Estate Co., Inc. v. Valinda Freed & Associates, Inc.,* 608 F. Supp. 354, 357 (M.D. Ala. 1985) (entering judgment for defendants in antitrust case brought by discount broker who alleged a group boycott; "A real estate agency generally has the right to refuse to cobroke with a competing agency for reasons sufficient to itself, including because it thinks the other agency is acting unfairly in trying to undermine its trade, provided its refusal stems from independent decision and not from some agreement, tacit or expressed."). Notably, mere allegations of parallel conduct are not sufficient to state a claim for a Section 1 violation. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007) ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)).

Because the Complaint does not allege any plausible causation theory connecting any act by HomeServices or HSF to Plaintiff's alleged injuries, the claims against these two defendants must be dismissed.

B.      **Plaintiff does not have antitrust standing.**

Plaintiff's antitrust claims also fail because Plaintiff lacks antitrust standing. Not all persons who claim to be injured by an antitrust violation can proceed with an antitrust claim. Instead, courts have developed the doctrine of "antitrust standing" to determine which plaintiffs are proper parties "to perform the office of a private attorney general and thereby vindicate the public interest in antitrust enforcement." *Schwab Short-Term Bond Market Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 115 (2d Cir. 2021) (internal quotation marks omitted).

Antitrust standing has two components: plaintiff must have (1) suffered a special kind of antitrust injury (i.e., the type of injury the antitrust laws were designed to prevent) and (2) be an "efficient enforcer" of the antitrust laws. *Id.* Whether a plaintiff is an "efficient enforcer" turns on four factors: (1) the directness or indirectness of the injury; (2) the existence of more direct victims whose self-interest would normally motivate them to sue; (3) the extent to which the claim is "highly speculative"; and (4) the importance of avoiding either the risk of duplicate recoveries or the danger of complex apportionment of damages. *Id.*

Here, as argued above, the Complaint does not plausibly tie any Plaintiff's injury— antitrust or otherwise—to any action taken by either HomeServices or HSF. For this reason alone, Plaintiff lacks antitrust standing.

Moreover, the Complaint establishes that Plaintiff would not be an "efficient enforcer" of the antitrust laws—every factor weighs against Plaintiff. First, any connection between the Challenged NAR Rules and Plaintiff's alleged injury is indirect. As noted above, Plaintiff operated in the market for years under NAR's Challenged Rules and found success, growing to be one of Utah's largest brokers from 2017 to 2021. This fact proves that NAR's rules did not directly cause Plaintiff any injury.

Second, there are more direct victims who have already sued NAR and the other defendants, taken their claims to trial, and extracted nationwide settlements. *E.g., Burnett v. Nat'l Assoc. of REALTORS,* No. 4:19cv-00332 (W.D. Mo.); *Moehrl et al. v. Nat'l Assoc. of REALTORS et al.,* 1:19-cv-01610 (N.D. Ill.). Thus, there is no possibility that an alleged antitrust violation will go undeterred.

Third, Plaintiff's theory of harm in this case is highly speculative. Again, Plaintiff operated successfully for years under the Challenged NAR Rules. Attempting to discern what caused Plaintiff's business to decline after several years of success would be highly speculative.[7] As would be any attempt to predict how Plaintiff would have fared in the hypothetical "but-for world" free from the alleged antitrust violations (such as determining Plaintiff's hypothetical market share and profit margin). Making such predictions of the alternate but-for world would be particularly problematic in this case because the jury would have to assume that Plaintiff would have been competing in a market where the many brokers and agents associated with defendants' long-established brands—such as Century 21, Keller Williams, RE/MAX, and Berkshire Hathway HomeServices—would have similarly been unrestrained by NAR's rules and—at least according to Plaintiff's theory—more willing to compete on price. *E.g., Dolphin Tours, Inc. v. Pacifico Creative Services, Inc.,* 773 F.2d 1506, 1512 (9th Cir. 1985) ("In projecting free market profits, antitrust plaintiffs are not entitled to assume favorable aspects of an anticompetitive market such as an unnatural price differential between themselves and their competitors and limited competition from third parties because of the difficulty of entering the market."). Finally,

---

[7] The Court can take judicial notice of the fact that many businesses suffered during the global pandemic. *E.g., Bioconvergence LLC v. Attariwala,* 2020 WL 3397733, at *2, n.1 (S.D. Ind. Apr. 10, 2020) (taking judicial notice of the "broadscale economic disruptions caused by the COVID-19 pandemic").

the fact that Plaintiff benefited from the allegedly higher commissions caused by the Challenged NAR Rules—indeed, Plaintiff's business model was to take advantage of these allegedly high commissions to undercut the market and build market share—would also complicate this analysis. *E.g., CVB, Inc. v. Corsicana Mattress Co.,* 604 F. Supp. 3d 1264, 1294 (D. Utah 2022) (noting that competitors who stand to benefit from a conspiracy to increase prices cannot bring a price-fixing claim, citing *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 582-83 (1986)).

Fourth, there is a high risk of duplicate recovery and complex apportionment of damages. Again, seller classes have already sued these defendants and obtained nationwide settlements on similar antitrust theories. In fact, so many cases have been filed that plaintiffs sought an MDL. *See In re: Real Estate Commission Antitrust Litigation,* MDL No. 3100, 2024 WL 1597517 (JPML Apr. 12, 2024) (order denying transfer to MDL). Attempting to determine whether any of the damages sought by consumers in those cases would have overlapped with profits that Plaintiff claims here would be virtually impossible.

All these factors weigh against finding antitrust standing. Plaintiff's claims should therefore be dismissed.

## V.   CONCLUSION

Neither HomeServices nor HSF is subject to personal jurisdiction in Utah. And, even if they were, Plaintiff's claims are untimely and substantively defective. For all these reasons, the claims against HomeServices and HSF should be dismissed.

DATED this 18th day of October, 2024.    **DORSEY & WHITNEY LLP**

By:     _/s/  Bryon Benevento_
Bryon Benevento

*Attorneys for Defendants HomeServices of*
*America, Inc., and HSF Affiliates LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of October, 2024, a true and correct copy of the foregoing **HOMESERVICES OF AMERICA, INC. AND HSF AFFILIATES LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was served electronically upon all counsel of record via the Court's CM/ECF filing system.

*/s/    Jacqueline Ervin*