Thomas R. Lee (5991)
SCHAERR | JAFFE
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
(202) 787-1060
tlee@schaerr-jaffe.com

Mike Bonanno (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I St NW, Suite 900
Washington, DC 20005
(202) 538-8225
mikebonanno@quinnemanuel.com

*Attorneys for Defendant National Association of REALTORS®*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| HOMIE TECHNOLOGY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS, an Illinois non-profit association; ANYWHERE REAL ESTATE INC., a Delaware corporation; KELLER WILLIAMS REALTY, INC., a Texas corporation; HOMESERVICES OF AMERICA, INC., a Delaware corporation; HSF AFFILIATES, LLC, a Delaware limited liability company; RE/MAX LLC, a Delaware limited liability company; and WASATCH FRONT REGIONAL MULTIPLE LISTING SERVICE, INC., a Utah corporation,<br><br>Defendants. | **NATIONAL ASSOCIATION OF REALTORS' REPLY IN SUPPORT OF ITS 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Case No.: 24-cv-00616-DAK-JCB<br><br>Judge Dale A. Kimball<br>Magistrate Judge Jared C. Bennett |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................2

    I.    Homie's "Initial Success" Confirms That NAR's Policies Did Not Create Entry Barriers ..............................................................................................................2

    II.    Homie Has Not Plausibly Alleged That Local Boycotts Of Homie Had Anything To Do With NAR .......................................................................................4

        A.    Homie Is Wrong That All Injuries Flowing From An Alleged Antitrust Conspiracy Give Rise To A Private Antitrust Claim ....................5

        B.    Homie Fails To Connect NAR To Any Conspiracy With Local Agents To Boycott Homie ................................................................................6

    III.    Homie Has Not Alleged NAR Intentionally Harmed Homie's Business ................9

CONCLUSION......................................................................................................................10

CERTIFICATE OF SERVICE ..............................................................................................12

## TABLE OF AUTHORITIES

                                          **Page**

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ............................................................................................................. 5

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990) .......................................................................................................... 5, 6

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
   784 F.2d 1325 (7th Cir. 1986) ............................................................................................ 3

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 6

*Belnap v. Steward Health Care Sys. LLC*,
   2020 WL 619402 (D. Utah. Feb. 10, 2020) (unpublished) ............................................ 3

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ............................................................................................................ 5

*CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*,
   430 F.Supp. 3d 1247 (D. Utah 2019) ................................................................................ 9

*Eastern States Retail Lumber Dealers' Ass'n v. United States*,
   234 U.S. 600 .................................................................................................................... 4, 5

*In re EpiPen Mktg. Sales Pracs. & Antitrust Litig.*,
   44 F.4th 959 (10th Cir. 2022) ............................................................................................ 2

*Farnell v. Albuquerque Pub. Co.*,
   589 F.2d 497 (10th Cir. 1978) ............................................................................................ 6

*Ill. Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ............................................................................................................ 5

*J. Allen Ramey, M.D., Inc. v. Pac. Found. for Med. Care*,
   999 F.Supp. 1355 (S.D. Cal. 1998) .................................................................................... 3

*Lantec, Inc. v. Novell, Inc.*,
   146 F.Supp. 2d 1140 (D. Utah 2001) ................................................................................ 1

*Licari v. Best Western Int'l, Inc.*,
   2013 WL 3716523 (D. Utah July 12, 2013) ...................................................................... 9

*Mallory v. Brigham Young University*,
  2012 UT App 242, 285 P.3d 1230 ........................................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................................. 8

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ............................................................................................................. 7, 8

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) (en banc) ................................................................................... 3

*Penne v. Greater Minneapolis Area Bd. of Realtors*,
  604 F.2d 1143 (8th Cir. 1979) ................................................................................................ 8

*Reazin v. Blue Cross & Blue Shield of Kan., Inc.*,
  899 F.2d 951 (10th Cir. 1990) ................................................................................................ 2

*Reibert v. Atl. Richfield Co.*,
  471 F.2d 727 (10th Cir. 1973) ................................................................................................ 6

*Richter Concrete Corp. v. Hilltop Concrete Corp.*,
  691 F.2d 818 (6th Cir. 1982) .................................................................................................. 4

*SCO Group, Inc. v. Int'l Bus. Machines Corp.*,
  879 F.3d 1062 (10th Cir. 2018) .............................................................................................. 9

*Suture Express, Inc. v. Owens & Minor Distrib., Inc.*,
  2016 WL 1377342 (D. Kan. Apr. 7, 2016) ............................................................................. 4

*Will v. Comprehensive Acct. Corp.*,
  776 F.2d 665 (7th Cir. 1985) .................................................................................................. 2

**PRELIMINARY STATEMENT**

To avoid the long line of cases holding that a company does not have standing to challenge a price-fixing conspiracy among its competitors, Homie now insists it is instead challenging a conspiracy to "erect[] substantial barriers to entry and expansion." Homie Opp. ("Opp."), ECF 78 at 2. Homie argues NAR's policies erected entry barriers that excluded it from the market and, "as an excluded competitor injured by Defendants' conspiracy to maintain their high prices, Homie has standing." *Id*. at 1-2. But to plead antitrust injury, a competitor that complains about exclusion must plausibly allege it was in fact excluded from the market. Homie has not done so.

Homie's own allegations refute any suggestion that NAR's policies created barriers to entry. Homie alleges it launched in Utah in 2015—years after NAR adopted the challenged policies. Within just two years, notwithstanding NAR's policies, Homie was one of the five largest brokerages in the state. These allegations show that NAR's policies neither created barriers to entry nor excluded Homie from the market.

To downplay the significance of these allegations, Homie argues it was pushed out of the market years *after* NAR adopted the challenged policies and *after* it became one of "the five largest" brokerages in the state, when its "initial success" "sparked" "hundreds or even thousands" of local real estate agents to boycott Homie's listings. Homie contends these boycotts caused it to sustain an antitrust injury that was a "foreseeable consequence" of the challenged NAR policies, *id.* at 7, which allows Homie to pursue antitrust claims against NAR. But Homie's "foreseeability" argument ignores binding precedent. The Supreme Court has narrowly prescribed who can bring a private antitrust claim, and it is blackletter law that a plaintiff cannot bring an antitrust claim for any injury flowing from an alleged conspiracy. A plaintiff instead "must show (1) an antitrust

injury; and (2) a ***direct*** causal connection between that injury and a ***defendant's violation*** of the antitrust laws." *Lantec, Inc. v. Novell, Inc.*, 146 F.Supp. 2d 1140, 1153 (D. Utah 2001) (emphasis added). Homie has not pleaded facts that establish a direct connection between the injuries it purportedly sustained due to the boycotts and NAR's policies, which were adopted years earlier.

Under the correct legal framework, Homie's boycott allegations can only support a claim against NAR if Homie plausibly alleges that NAR conspired with local agents. It has not done so. Homie contends NAR's policies "facilitated" local agent boycotts, but that does not suggest that NAR agreed to boycott Homie or exclude the possibility that local agents acted independently in their interactions with Homie. Indeed, nothing in Homie's Complaint plausibly indicates that NAR had anything to do with the supposed local boycotts that allegedly injured Homie.

These same failings are fatal to Homie's tortious interference claim. While Homie insists NAR intentionally interfered with Homie's business relationships, it has not alleged that NAR took any action targeted at Homie. At best, it points to actions that were directed to the public and the market as a whole, which cannot sustain a tortious interference claim as a matter of law.

## ARGUMENT

### I.  Homie's "Initial Success" Confirms That NAR's Policies Did Not Create Entry Barriers

"Entry barriers are particular characteristics of a market which impede entry by new firms into that market." *Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 968 (10th Cir. 1990); *see also Will v. Comprehensive Acct. Corp.*, 776 F.2d 665, 672 (7th Cir. 1985) ("If rivals may design and offer a similar package for a similar cost, there is no barrier"). "Entry barriers may include" things like "high capital costs or regulatory or legal requirements such as patents or licenses," *Reazin*, 899 F.2d at 968, or long-term, exclusive contracts that prevent a new entrant

2

from achieving minimum viable scale, *In re EpiPen Mktg. Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 983 (10th Cir. 2022). On the other end of the spectrum, as Judge Easterbrook has explained, an industry has no entry barriers when "[n]ew firms may enter easily" or "[e]xisting firms may expand their sales quickly." *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1335 (7th Cir. 1986).

Homie's Complaint describes an industry with no barriers to entry—including the entry barriers that were purportedly created by NAR's policies. Homie alleges that it started its business in Utah in 2015, Compl. ¶ 44, years after many of the challenged NAR policies were in place. *See id.* ¶¶ 59, 77, 81; *see also* Mot., ECF 74 at 4-5. And Homie alleges that it became one of the five largest brokerages in the state just two years after entering the market, *id.* ¶ 49—well ***after*** all of the challenged policies had been adopted, *id.* ¶¶ 59, 77, 81. These allegations conclusively refute Homie's claim that NAR's policies impeded entry by Homie (or anyone else).

Homie insists these are arguments about "the materiality of the impact of the challenged conduct on Homie's business," which are "fact-bound issues not susceptible to resolution on the pleadings." Opp. 11. That is wrong. Even at the pleading stage, for Homie "to have properly stated a Section 1 claim, [it] must have set forth plausible allegations that Defendants' actions . . . negatively impacted the Utah . . . market" as a whole. *Belnap v. Steward Health Care Sys. LLC*, 2020 WL 619402, at *4 (D. Utah. Feb. 10, 2020) (unpublished) (dismissing antitrust claims because of failure to plead antitrust injury). And Homie has failed to plausibly allege any harm to competition caused by the purported entry barriers created by NAR's policies.

Because Homie's allegations confirm that NAR's policies did not create barriers to entry, it has failed to plead an antitrust injury caused by the creation of entry barriers, and its claim should

be dismissed. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 454-55 (6th Cir. 2007) (en banc) (affirming dismissal where plaintiff had "not alleged facts establishing . . . market-entry barriers that caused it a cognizable antitrust injury"); *J. Allen Ramey, M.D., Inc. v. Pac. Found. for Med. Care*, 999 F.Supp. 1355, 1363 n.8 (S.D. Cal. 1998) ("Plaintiff has already entered the market. Therefore, it cannot suffer an antitrust injury related to barriers to market entry."); *see also Suture Express, Inc. v. Owens & Minor Distrib., Inc.,* 2016 WL 1377342, at *22 (D. Kan. Apr. 7, 2016) (unpublished), *aff'd,* 851 F.3d 1029 (10th Cir. 2017) (no barriers to entry when new "competitors have expanded in the market"); *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 824 (6th Cir. 1982) (accord).

## II. Homie Has Not Plausibly Alleged That Local Boycotts Of Homie Had Anything To Do With NAR

In addition to failing to plausibly plead the existence of entry barriers, Homie does not directly attribute its alleged injury to entry barriers purportedly created by NAR's policies. Homie instead alleges that its "initial success"—over a period between 2017 and 2021—"sparked" individual real estate agents in Utah to "boycott" Homie's listings. Compl. ¶¶ 49-51. Homie alleges these actions by local agents "gradually but inexorably reduc[ed] its market share, revenue, and profits until the firm was unable to compete effectively." *Id*.

Homie insists the conduct of local buyer agents was a "natural consequence" of NAR's policies and therefore NAR is liable for injuries caused by local agents. But that is wrong. Homie must either allege that NAR's policies directly caused its injuries or that NAR directly participated in the boycotts that caused Homie's decline. It has failed to allege facts to support either theory.

4

### A.     Homie Is Wrong That All Injuries Flowing From An Alleged Antitrust Conspiracy Give Rise To A Private Antitrust Claim

Homie relies primarily on *Eastern States Retail Lumber Dealers' Ass'n v. United States*, 234 U.S. 600, a Supreme Court decision from 1914, to suggest NAR is culpable for all actions taken by third parties that may arguably be a "natural consequence" of NAR's policies, no matter how far removed from NAR they may be. Opp. 7. Its reliance on *Eastern States* is misplaced.

***First***, Homie mischaracterizes the holding of *Eastern States*. That decision discusses whether a plaintiff can prove the existence of an antitrust conspiracy using circumstantial evidence. It does not discuss antitrust injury or suggest that a plaintiff can establish antitrust injury based on an attenuated chain of causation involving the actions of third parties that were allegedly a "natural consequence" of the challenged conspiracy. 234 U.S. at 612.

***Second***, Homie's argument ignores decades of intervening caselaw, which purposefully limited the scope of private antitrust claims. In its *Brunswick* decision in 1977, the Supreme Court adopted the antitrust injury requirement to limit private antitrust actions to the class of persons who can "prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Court later reaffirmed that requirement to limit private antitrust claims to persons injured by a "competition-reducing" aspect of the defendant's conduct. *Atl. Richfield Co. v. USA Petroleum Co.* ("*ARCO*"), 495 U.S. 328, 344 (1990). Well after *Eastern States*, other judge-made principles emerged to ensure private antitrust claimants were limited to those that promised "efficient enforcement of the antitrust laws." *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 732 (1977) (limiting federal antitrust claims to direct purchasers); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

5

U.S. 519 (1983) (limiting federal antitrust claims to injuries proximately caused by the alleged antitrust violation). Courts imposed these limits because they recognized that Congress did not intend for the Clayton Act to provide a private remedy "for all injuries that might conceivably be traced to an antitrust violation." *Id.* at 534 (citation omitted). Homie's reliance on *Interstate Circuit v. United States* (decided in 1939) and *Pinkerton v. United States* (decided in 1946) is misplaced for the same reasons. Opp. 7.

Homie's insistence that it can sue NAR for its loss of market share—purportedly caused by local boycotts, organized without NAR's involvement, years *after* NAR adopted the challenged policies—flies in the face of these principles. As a matter of law, a defendant is not liable for *all* alleged damages flowing from an alleged antitrust violation. *ARCO*, 495 U.S. at 335 ("[R]espondent maintains that *any loss* flowing from a *per se* violation of § 1 automatically satisfies the antitrust injury requirement. We reject [that] contention[] and hold that respondent has failed to meet the antitrust injury test") (emphasis added). And a plaintiff cannot avoid this bar by alleging its injuries were a "foreseeable" result of the alleged antitrust violation. *Reibert v. Atl. Richfield Co.*, 471 F.2d 727, 731 (10th Cir. 1973) ("Antitrust violations admittedly create foreseeable ripples of injury to individual stockholders, consumers and employees, but the law has not allowed all of these standing to sue"). A plaintiff must instead allege specific facts that show "the antitrust violations are the proximate cause of his injury," which Homie has not done. *Farnell v. Albuquerque Pub. Co.*, 589 F.2d 497, 501 (10th Cir. 1978) (quoting *id.*).

### B. Homie Fails To Connect NAR To Any Conspiracy With Local Agents To Boycott Homie

In addition to arguing NAR is liable for all damages allegedly flowing from the challenged NAR policies, Homie argues it has asserted a valid Section 1 claim against NAR because NAR's

6

policies "facilitated" boycotts of Homie's listings by local real estate agents. Opp. 8-9; Compl. ¶ 6. But allegations that NAR agreed to adopt policies, which in turn "facilitated" boycotts by local agents, Compl. ¶ 6, which then "gradually" injured Homie, *id.* ¶ 51, cannot impute liability to NAR unless NAR and local agents **agreed** to boycott Homie. Independent decisions allegedly made by local agents to boycott Homie cannot give rise to liability for NAR. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) ("The crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement.") (cleaned up).

The Tenth Circuit's reasoning in *Abraham v. Intermountain Health Care Inc.* is instructive. 461 F.3d 1249 (10th Cir. 2006). In *Abraham*, "[t]he heart of the Plaintiffs' § 1 claim [was] that IHC [a hospital system], at the behest of several of its panel ophthalmologists—including Drs. Miller and Brodstein—unlawfully excluded optometrists from its provider panels, and that this exclusion injured both competition, generally, and the Plaintiffs, specifically." *Id*. at 1256. The Tenth Circuit affirmed the district court's summary judgment dismissal, notwithstanding evidence that "Drs. Miller and Brodstein . . . worked vigorously with each other and with other panel ophthalmologists to discourage IHC from paneling optometrists." *Id*. at 1258. Indeed, it was "clear that IHC excluded optometrists **because of** the actions of its panel ophthalmologists." *Id*. at 1259 (emphasis added). But that was not enough to establish an unlawful agreement between the hospital system and ophthalmologists because "the Plaintiffs' argument simply assumes the existence of concerted action because panel ophthalmologists complained to IHC about paneling optometrists." *Id*. at 1261. In other words, plaintiffs failed to show their exclusion was the product of an agreement, rather than independent action. *Id*. at 1263.

*Abraham* teaches that even an alleged boycott that occurs "because of" complaints from a

7

competitor may not amount to a Section 1 conspiracy. Here, Homie has not even alleged that much. Homie has not alleged local real estate agents boycotted Homie's listings "because of" direction from NAR. It has only alleged that policies adopted by NAR years—if not decades—before the alleged boycotts had "facilitated" the actions allegedly taken by local agents that purportedly targeted Homie. That is a far cry from the "conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984), which is required to plead a plausible Section 1 agreement.

*Penne*, the sole case cited by Homie to support its "facilitation" theory, does not say otherwise. There, the Eighth Circuit held only that the local real estate board's "involvement in the alleged conspiracy to fix and maintain brokerage fees has not been conclusively disproved by pretrial discovery and that there remain material issues of fact that can only be resolved at later stages of the litigation." *Penne v. Greater Minneapolis Area Bd. of Realtors*, 604 F.2d 1143, 1151 (8th Cir. 1979). Notably, *Penne* was decided in 1979, five years before the Supreme Court set forth the prevailing standard for proving a Section 1 agreement in *Monsanto*. *Penne* also was decided six years before the Supreme Court clarified how *Monsanto* should be applied to Section 1 agreements to be inferred from circumstantial evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (a plaintiff "must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action").

While Homie attempts to salvage its claim arguing the challenged policies "encouraged and enabled" local agents to boycott Homie, Opp. 25, by giving them "the ability and incentive to steer customers away from clients represented by discount brokers," *id*. at 6, these conclusory claims have no factual support in Homie's Complaint. Homie does not explain why local agents

8

had no "ability" to steer their clients away from discount brokers before NAR's policies were enacted—a simple phone call to the listing agent could have ascertained the offered commission on each listing. Nor does Homie explain—to the extent "steering" is even possible—how NAR's policies changed an unscrupulous buyer-agent's incentive to try to "steer" clients toward listings with higher commissions. If a buyer-agent is willing to jeopardize their real estate license and status as a REALTOR® to steer clients to listings with higher commissions, it is not at all clear from Homie's Complaint how NAR's policies altered those incentives.

### III.  Homie Has Not Alleged NAR Intentionally Harmed Homie's Business

To establish that NAR intentionally interfered with its business, Homie argues that interference was the "intended, foreseeable, and natural result" of NAR's policies. *Id*. at 23. But for such a claim to be viable, NAR would have to have been "substantially certain" that its policies would interfere with Homie's business. *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F.Supp. 3d 1247, 1261-62 (D. Utah 2019) (citation omitted). Homie, however, has failed to allege NAR had any reason to believe its policies would have any effect on Homie. Indeed, there are no allegations suggesting NAR had any knowledge of Homie's business before this lawsuit.

The sole case Homie cites to support this argument, *SCO Group, Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1083 (10th Cir. 2018), is distinguishable. Homie equates NAR's actions to those of a defendant in *SCO Group* who "repeatedly interrupted sales activities, caused plaintiff's customers to comment and complain, and more than once caused a customer to leave the store." *Id.* (quotation omitted). But—in the next paragraph—the Tenth Circuit explicitly rejects the suggestion "that any improper conduct directed toward the public and the general market would be actionable as a claim for tortious interference whenever a competitor's business relationships

9

suffer as a result" because that view "would convert almost any claim for illegal market-based activities into a tortious-interference claim." *Id*. In this case, NAR's policies were generally applicable to all multiple listing services operated by a local association of REALTORS®. Mot. 3-4. There is no allegation that NAR targeted Homie or its customers specifically, which is fatal to its tortious interference claim.

As its final attempt to establish intent, Homie argues that NAR assumes franchisor liability through the challenged policies. As support, Homie relies on *Mallory v. Brigham Young Univ.*, 2012 UT App 242, 285 P.3d 1230, and an innkeeper liability case which it claims "is on all fours" here, *Licari v. Best Western Int'l, Inc.*, 2013 WL 3716523 (D. Utah July 12, 2013). Homie argues these cases support its theory that NAR established "control over 'the means and method' of the performance of [its] affiliates' conduct in Utah." Opp. 23 (quoting *Mallory* ¶¶ 20-21). But again, Homie fails to plead a causal link between the alleged boycotts and NAR. None of the five instances it describes contain even a whisper of connection between those actors and NAR, let alone one sufficient to establish a franchisor-franchisee relationship. Mot. 20. Homie therefore has failed to establish any linkage between these incidents and the complained-of NAR policies. Having failed to establish intent, Homie's tortious interference claim fails.

## CONCLUSION

NAR respectfully asks the Court to dismiss Homie's Complaint.

10

Dated: December 13, 2024 /s/ *Michael D. Bonanno*
Michael D. Bonanno
mikebonanno@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000

Thomas R. Lee (5991)
SCHAERR | JAFFE
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
(202) 787-1060
tlee@schaerr-jaffe.com

*Attorneys for Defendant National Association of REALTORS®*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on this 13th day of December 2024, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

/s/ *Michael D. Bonanno*
Michael D. Bonanno
